[No. 5216.]
[No. 2830 C. A.]

## THE PLATTNER IMPLEMENT COMPANY v. BRADLEY, ALDERSON & CO.

1. **Pleading—Demurrer—Waiver.**

A plaintiff who, in an action on a foreign judgment, notices for trial the equitable issue raised by the averments of the answer that such judgment was fraudulently obtained, and the replication denying such averments, thereby waives his demurrer that several causes of action have been improperly united in the answer and cross-complaint.—P. 101.

2. **Same—Statutory Construction.**

Under § 52, Mills' Ann. Code, providing, inter alia, that demurrers must be disposed of before any other pleading to the same cause of action shall be filed, or they will be deemed waived, a plaintiff filing a replication denying the allegation of new matter in the answer and going to trial thereon, thereby waives his demurrer to such answer.—P. 104.

3. **Courts—Process—Service—Judgments — Enticing Defendant into Jurisdiction.**

In an action on a foreign judgment rendered against a domestic corporation, it was found that no fraud was practiced to procure the presence of its president within the jurisdiction of the foreign court when process was served, that a large part of the business between the parties from which the action arose was transacted there, that the indebtedness was payable there, that at the time of the service the president was actually engaged in the settlement of the accounts and actually ordered more goods from plaintiff for his company, and that he also transacted business for his company, as president, with a third party. Held, that the defendant was lawfully summoned by such foreign court, and that the judgment there rendered is a valid personal judgment against such domestic corporation. —P. 105.

4. **Practice in Civil Actions—Action on Foreign Judgments—Equitable Set-off—When Allowable.**

Where service of process in an independent action cannot be had upon plaintiff in the jurisdiction in which he is attempting to enforce a foreign judgment, equity will allow the judgment debtor to set off claims for unliquidated damages for defective goods sold by plaintiff to defendant, for failure to deliver certain merchandise according to contract, and for certain credits to which defendant is entitled under such contract.—P. 106.

5. **Same—When Set-off Not Allowable.**

In an action on a foreign judgment by a foreign against a domestic corporation, it appeared that the plaintiff corporation had complied with the laws prescribing when a foreign corporation may transact business in this state, including an appointment of agent upon whom process could be served. Held, that defendant was not entitled to an equitable set-off for claims for unliquidated damages for defective goods sold by plaintiff to defendant, for failure to deliver certain merchandise according to contract, or for certain credits to which defendant is entitled under such contract.—P. 108.

*Appeal from the District Court of Arapahoe County.*
*Hon. Samuel L. Carpenter, Judge.*

Action by Bradley, Alderson & Co., a corporation, against The Plattner Implement Company, a corporation. From a judgment for plaintiff on appeal from a judgment for defendant in the county court, defendant appeals.     *Affirmed.*

Mr. JOHN M. WALDRON, Mr. R. D. THOMPSON and Mr. C. J. BLAKENEY, for appellant.

Mr. J. M. ELLIS and Mr. WARWICK M. DOWNING, for appellee.

This action was brought on April 6, 1901, in the county court of Arapahoe county on a judgment obtained in the circuit court of Jackson county, Missouri. The complaint alleges that appellee (plaintiff below) is an Illinois corporation doing business in Kansas City, Mo., and that appellant (defendant

below) is a Colorado corporation doing business in Denver, Colo.; that on October 19, 1900, plaintiff commenced suit against defendant in the circuit court of Jackson county, Missouri, and that on January 31, 1901, a judgment was therein rendered by said circuit court against the defendant in the sum of $1,566.77; that no part thereof has been paid, and that the same draws interest at the rate of six per cent. per annum. An authenticated transcript of the record, in accordance with the act of congress, was set out in the complaint; and the plaintiff prays for judgment for said sum, with interest and costs.

The answer filed in the county court on May 23, 1901, alleges that defendant, at the time of the service of summons in the action in which the judgment herein sued on was obtained, or at any other time, was not doing business outside of the state of Colorado, and that said Missouri judgment was based upon service of summons made on Andrew Plattner, president of the defendant company, while he was temporarily in Kansas City, at the instance of the plaintiff company, and that said Plattner was fraudulently enticed into Missouri in order that plaintiff might get service upon him, and thereby compel the defendant company to litigate its differences with plaintiff company in said circuit court of Jackson county, Missouri, instead of in the state of Colorado, where the defendant was doing business, and where its principal office was located; alleges that at the time the action was commenced said judgment was paid, and defendant was not indebted to plaintiff in any sum whatever; but, on the contrary, plaintiff company was indebted to defendant company. The second, third, fourth and fifth defenses of said action consist of counter-claims on which defendant demands judgment against plaintiff in the sum of $1,565.40.

On May 31, 1901, plaintiff filed its demurrer in the county court to the several defenses set forth in the answer, and on August 19, 1901, filed its reply to the first defense, denying each and every allegation of new matter therein contained.

On August 21, 1901, plaintiff filed its petition praying that the cause be set for trial upon the validity of the Missouri judgment, being the issue presented by the complaint, the first defense in the answer, and the reply thereto, and that plaintiff might have ten days after the determination of the court thereon within which to reply to the second, third, fourth and fifth defenses contained in the answer, or to take such other steps as it might be advised. This petition was granted; said issue was tried by the county court, and on January 6, 1902, judgment was rendered for defendant.

Plaintiff thereupon appealed to the district court, and such appeal was consummated January 15, 1902. On February 27, 1902, plaintiff, by leave of court, filed an amended demurrer to the answer and cross-complaint on the ground that several causes of action had been improperly united. On March 1, 1902, the case was called for trial in the district court. Defendant objected to the trial at that time, or at any time, until the issues of law raised by the demurrer filed on the 27th of February, 1902, had been passed upon and disposed of. These objections were overruled. Thereupon the district court granted plaintiff's petition theretofore filed in the county court on August 21, 1901, and in the district court on January 15, 1902, asking that the issues raised by the complaint, the first defense in the original answer, and the reply thereto, be tried separately. Thereupon evidence upon this issue was introduced, and on April 2, 1902, the court announced that it found

said issues, so joined by the first defense in the answer and the reply thereto, in favor of plaintiff.

On May 26, 1902, nearly three months after these issues had been tried, the following proceedings were had, to wit:

"At this day come the parties hereto by their attorneys, respectively,

"And thereupon this cause being regularly reached for hearing according to previous assignment upon the plaintiff's demurrer to the counterclaim and answer of the defendant, the said defendant confesses the demurrer of the plaintiff, and the court sustains said demurrer.

"Whereupon, on motion of defendant, said defendant is allowed to file his amended answer herein instanter, which is accordingly done."

The amended answer so filed on the 26th day of May, 1902, consists of a first defense of specific denials of most of the allegations of the complaint, and denials for want of information of all other allegations except the jurisdiction of the county court and the incorporation of defendant; of a second defense alleging fraudulent service of summons made after the plaintiff had enticed Mr. Plattner, president of the defendant company, into the state of Missouri; of a third defense alleging that defendant company was not doing business in the state of Missouri, and that Mr. Plattner, the president of the defendant company, was but temporarily in Kansas City, Mo., on the first of November; of a fourth defense, a fifth defense, a sixth defense and a seventh defense, which respectively consist of counter-claims alleged to be existing in favor of defendant and against plaintiff, a foreign corporation; of an eighth defense alleging the failure on the part of plaintiff to have complied with section 10 of chapter 52, Session Laws of 1901, on account of which neglect it had no standing in

court, and could not prosecute the action; of a ninth defense, which was subsequently withdrawn.

On May 27, 1902, plaintiff filed a motion to strike the first, second and third defenses from the amended answer on the ground that they were substantially the same defenses as were averred in defendant's first defense in its original answer, and upon which issues were joined, evidence submitted, and a judgment rendered. On the same day plaintiff filed a demurrer to the fourth, fifth, sixth and seventh defenses in the amended answer. The grounds of the demurrer to the fourth defense were (1) that it did not state facts sufficient to constitute a defense or a counter-claim; (2) that it was improperly united with the first, second and third defenses; (3) that it is unintelligible and uncertain, and also demurred upon the same ground to the fifth, sixth and seventh defenses, respectively.

On the same day (May 27, 1902) plaintiff filed a reply to the eighth and to the ninth defense. On May 29, 1902, plaintiff filed a motion to strike the amended answer from the files, and for judgment on the ground that defendant had not complied with section 10, chapter 52, Session Laws of 1901, and therefore should not be permitted to defend or prosecute its counter-claims.

On June 5, 1902, the defendant filed a general demurrer to plaintiff's replication to the eighth defense, and withdrew its ninth defense. On September 12, 1902, the district court overruled defendant's demurrer to plaintiff's replication to the eighth defense, and struck out said eighth defense; overruled plaintiff's motion to strike the amended answer and for judgment; sustained plaintiff's demurrer to the fourth, fifth, sixth and seventh defenses of defendant's amended answer; and granted plaintiff's motion to strike the first, second and third defenses of

the amended answer; and on motion of plaintiff ordered a judgment to be entered in favor of plaintiff for the sum of $1,719.53 in accordance with its previous findings; and thereupon judgment was entered for the plaintiff for the sum aforesaid.   From the judgment defendant appeals.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The first ground relied on in argument for a reversal is the action of the court in proceeding with the trial of the issue as to the validity of the Missouri judgment, while the demurrer to the answer and cross-complaint for misjoinder of causes of action, filed February 27, 1902, was still pending.   The court ruled that plaintiff, by noticing the equitable issue for trial, waived its demurrer and its right to further object that several causes of action were improperly united in the answer and cross-complaint. Counsel for defendant contends that the waiver was not complete until the trial commenced.

While this difference is of no substantial significance, we agree with the view of the trial court that the plaintiff, by noticing this issue for trial on its merits, waived its demurrer and the issues of law presented thereby, and its right to object to the answer and cross-complaint on the ground of misjoinder.   We are unable to see wherein the defendant was prejudiced by this ruling, which was clearly in its favor.

We do not understand that the objection to proceeding with the trial of the issue mentioned was based upon the ground that demurrers to the other defenses were pending and undisposed of, but because of the pendency of the demurrer for misjoinder filed February 27, 1902.

While the question of proceeding with the trial was under consideration, there appears of record quite an extended colloquy between the court and counsel for defendant, in which the following occurs:

Mr. Blakeney: "The defendant protests and objects to going to trial at this time in this action, for the reason that there are issues of law undisposed of, and particularly calling your Honor's attention to the demurrer to the answer and cross-complaint filed herein by the plaintiff on the 27th day of February, 1902, which has been noticed for hearing before your Honor and is at this time pending and undisposed of."

The court, after expressing its views as to the practice in cases appealed from the county court, said:

"If the plaintiff desires, he can have this court pass upon the demurrer which he filed in the county court before the issue is taken up. But if he comes into this court and moves to set it down for trial, he has waived his right to again complain by a demurrer."

Mr. Blakeney: "Then the only place we differ is, I take the position that he has not waived it until he goes to trial, while your Honor takes the position that he waives it if he notices it for trial."

The Court: "Yes, sir."

Mr. Blakeney: "Then your Honor should not have permitted the filing of the demurrer yesterday."

The Court: "It is right for me to permit them to file a demurrer to the other defenses. Every defense stands alone and must be complete in itself. Instead of being four defenses, they are four answers. So far as the first defense in this case is concerned they have waived their right to demur to

it, because they have noticed it for trial. Now, the question which I am going to determine first is whether or not it was proper for this court to try that issue until the issues are all made up with respect to the other defenses.''

After argument of counsel upon this question, the court took the matter under consideration, and on March 4, 1902, announced its conclusion, and after stating that the issue presented by the complaint, the first answer and replication was an equitable one, said:

''That being true, it becomes a case for the court, sitting as a court in equity, and is not to be intermingled with the purely legal matters which have been presented by other pleadings; and should be tried separately, and we will proceed to the trial of the case upon the issue presented by this first defense and the replication thereto.''

Mr. Blakeney: ''This, I understand, is the ruling upon the petition?''

The Court: ''Yes, sir.''

Mr. Blakeney: ''We will save an exception to the ruling. Now, if your Honor will kindly pass upon the objection that we made as to going to trial until a disposition of the demurrer was had.''

The court, after giving its views upon this question, said:

''My remarks, of course, apply to the first defense, and the court's ruling upon that proposition is that the right to a hearing upon the demurrer as precedent to the trial of the issue has been waived.''

Mr. Blakeney: ''I desire, before your Honor rules directly, to have the record show that the demurrer to which the defendant refers in its objections is the demurrer of misjoinder herein filed on the 27th of February, 1902.''

The Court: "Yes, sir; and the result is the same; the ruling with respect to that is that if the plaintiffs want to question this first defense by demurrer they come too late, because they have waived their preceding demurrer and have asked this to be tried upon the first defense and the replication thereto."

It is therefore manifest that counsel for defendant predicated the objection to the trial of the issue presented by the first answer and replication upon the pendency of the demurrer of February 27, 1902, and did not interpose any objection thereto because the demurrers to the fourth, fifth, sixth and seventh causes of action or counter-claims were undisposed of. And the argument presented to us on this phase of the case is based entirely upon the theory that the demurrer filed February 27 was pending and undisposed of at the time of the trial, and remained undisposed of until May 26, 1902, when it was confessed by defendant.

We think the court correctly held that the demurrer filed in the county court to the first defense was waived by plaintiff by filing its replication and going to trial thereon. Section 52 of the Code provides, *inter alia:* "Demurrers must be disposed of before any other pleading to the same cause of action shall be filed, or they will be deemed waived." And that by noticing this issue for trial, the demurrer of February 27, 1902, was waived and finally disposed of. Counsel are therefore mistaken in their assumption that the demurrer of February 27 remained undisposed of until May 26, 1902, and that it was then confessed by defendant, but that such confession applied to the demurrers filed in the county court to the other defenses which were the only ones then before the court undisposed of; and there is no merit

in the contention that its amended answer filed on May 26, 1902, reopened for re-trial the equitable issue three months after it had been tried and disposed of on its merits.

The issues remaining undisposed of after such trial were those tendered by defendant's counterclaims set forth in its second, third, fourth and fifth defenses, and the demurrers thereto. These were the demurrers referred to in the proceedings of May 26, 1902, and were those confessed by the defendant, and hence the leave to file an amended answer then granted was intended to and could apply only to those defenses.

The court, therefore, properly sustained plaintiff's motion to strike the first, second and third defenses in the amended answer, because the matters and things therein stated were substantially the same as they were in defendant's first defense in its original answer, and upon which issue was joined, evidence submitted, trial had, and judgment of the court rendered thereon.

2. The jurisdiction of the Missouri court to render the judgment sued on is attacked on three grounds: (1) because Mr. Plattner, the president of the defendant company, was fraudulently enticed into the state of Missouri for the purpose of procuring service of summons upon him; (2) that the debt sued for was not contracted in the state of Missouri; (3) because defendant company was not doing business in the state of Missouri at the time of the service of the process, and that its president was there only casually on his private business.

Testimony on these several propositions was introduced, and the court below, after duly considering the evidence of the respective parties and the law applicable thereto, found that "there was no

fraud practiced to procure the presence of the president of the defendant company in Kansas City at the time process was served upon him''; that ''the transactions between the plaintiff and defendant out of which the original action arose were in large part business done in Kansas City, and that whatever indebtedness accrued therefrom was payable in Kansas City''; that Mr. Plattner, president of the defendant company, at the time the summons was served upon him ''was actively engaged in behalf of his company in the settlement of its accounts with the plaintiff, and that he actually ordered goods for his company at that time, and at the same visit, as president, transacted business for his company with The Rock Island Improvement Company, a corporation of Kansas City.''

An examination of the testimony as disclosed in the record satisfies us that the findings of the trial court on these several propositions are supported by a preponderance of the evidence, and that the defendant was lawfully summoned under the laws of Missouri, and that the judgment under consideration is a valid personal judgment against the defendant company.

3. This brings us to the consideration of the errors assigned upon the action of the court in sustaining plaintiff's demurrer to the fourth, fifth, sixth and seventh defenses in the amended answer. The matters therein alleged consist of claims for unliquidated damages for defective goods sold and delivered by plaintiff to defendant; for failure on the part of plaintiff to deliver certain merchandise in conformity with the terms of its contract; and for certain credits to which defendant claims it was entitled by the terms of the contract.

It is conceded that the mere existence of these

claims is not sufficient to entitle defendant to set off the same against the judgment sued on. What is contended is that the non-residence of a party against whom claims of this nature are asserted is sufficient to justify a court of equity to set off the same.

It is settled by the weight of authority that the insolvency of a party against whom a set-off is claimed is sufficient ground for equitable interference, but there is a marked conflict in the authorities as to whether the non-residence of the party against whom the set-off is asserted is good ground for such equitable relief, yet we think the weight of authority and better reason sustain the rule that equity will afford relief in the way of set-off of claims of this character when the party against whom they exist is a non-resident upon whom the service of process in an independent action cannot be had within the jurisdiction in which he is attempting to enforce a judgment obtained in a foreign jurisdiction.—*Rolling Mill Co. v. Ore & Steel Co.*, 152 U. S. 596, 616; *Quick v. Lemon*, 105 Ill. 578; *Taylor v. Stowell*, 4 Met. (Ky.) 175; *Forbes v. Cooper*, 88 Ky. 285; *Robbins v. Hawley*, 1 T. B. Mon. 18; *Edminson v. Baxter*, 4 Hayw. (Tenn.) 112; *Davis v. Milburn*, 3 Iowa 163; *Brown v. Pegram*, 149 Fed. 515.

The question, therefore, is whether the defendant, by its pleading and under the facts disclosed in the record, is entitled to avail itself of this remedy in this case. In other words, is it alleged or shown that plaintiff corporation is a non-resident, and that service of process in an independent suit could not have been had upon it within this jurisdiction?

The allegations of the amended answer are: That the plaintiff company is and at all times hereinafter mentioned was a corporation organized and existing under and by virtue of the laws of the state

of Illinois; and in the eighth defense that the plaintiff had failed "to comply with section 10, chapter 52, Laws of 1901"; and in the ninth defense that it had not paid its annual license tax for the years 1901 and 1902, and therefore had no right to maintain this suit. The plaintiff in its reply admitted the organization of the defendant company as averred in its answer, but denied the allegations in the eighth and ninth defenses. The ninth defense was afterwards withdrawn, and the defendant admitted that plaintiff had complied with the requirements of the statute, and had a proper standing in court.

Furthermore, the verification of the complaint shows affirmatively that James M. Ellis was the agent of the plaintiff in Colorado, and duly designated as such in the certificate of the articles of incorporation of plaintiff filed with the secretary of state of the state of Colorado, and as shown by the certificate of the secretary of state exhibited to the court and counsel for defendant on the trial. Therefore at all times since the 21st day of August, 1899, the plaintiff company could have been sued in this state and service had upon its duly authorized and designated agent.

In these circumstances, we think that the defendant is not in a position to invoke the doctrine of equitable set-off, and that the court properly sustained plaintiff's demurrer to these defenses. Our conclusion is that the court below committed no error in the rulings complained of, and that its judgment should be affirmed.          *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.